JFM:IJ
F.#2011R01433

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

MITCHELL GERSTEIN,

              Defendant.

- - - - - - - - - - - - - - - - - X

I N F O R M A T I O N

Cr. No.  12 CR 51 (KAM)
(T. 18, U.S.C., §§ 371
 and 3551 et seq.)

THE UNITED STATES ATTORNEY CHARGES:

      At all times relevant to this Information, unless otherwise indicated:

I.   Background

      1.   Synergy Brands Inc. was a holding company based in Syosset, New York, that operated principally through a wholly owned subsidiary, PHS Group Inc. (collectively, "Synergy"). Synergy and its subsidiaries purported to manufacture and distribute baking mixes, spices, packaged meals and wholesale groceries throughout the United States.

      2.   From approximately June 29, 1998 through October 2, 2008, Synergy was a publicly-traded corporation whose shares traded on the National Association of Securities Dealers Automated Quotations ("NASDAQ") under the ticker symbol "SYBR." NASDAQ suspended trading in SYBR on October 2, 2008, and delisted it on December 15, 2008.   From approximately October 2, 2008

through all times relevant to this Information, Synergy was a publicly-traded corporation whose shares traded on the over-the-counter exchange under the ticker symbol "SYBRQ." From June 29, 1998 through all times relevant to this Information, Synergy's common stock was registered with the United States Securities and Exchange Commission (the "SEC") under Section 12 of the Securities Exchange Act of 1934.

3.      As a public company, Synergy was required to comply with the rules and regulations of the SEC. The SEC's rules and regulations were designed to protect members of the investing public by, among other things, ensuring that a company's financial information was accurately recorded and disclosed to the investing public.

4.      Under the SEC's rules and regulations, Synergy and its officers were required to, among other things, (a) make and keep books, records and accounts that, in reasonable detail, fairly and accurately reflected Synergy's business transactions, including its earnings, revenue and expenses; (b) devise and maintain a system of internal accounting controls sufficient to provide reasonable assurance that Synergy's transactions were recorded as necessary to permit preparation of financial statements in conformity with Generally Accepted Accounting Principles ("GAAP"); and (c) file with the SEC quarterly reports (on Form 10-Q) that included financial statements that presented

2

Synergy's financial condition and the results of its business operations in accordance with GAAP.

5. The defendant MITCHELL GERSTEIN was the Chief Financial Officer of Synergy.

6. Loretta Flour, Loretta Foods, Ontario Ltd., New Durham Trading, and NDT Food Service, among other related companies were corporations based in Canada ("the Canadian companies") that manufactured and distributed food products to Synergy and others.

II. The Synergy Check Kiting Scheme

7. "Check kiting" is a scheme in which: (1) checks that are not backed by sufficient funds are deposited into an account (the "Deposited Checks"); (2) the Deposited Checks are immediately credited to the account, thus creating an artificially inflated balance; and (3) the account holder then writes checks off the artificially inflated balance while knowing that the Deposited Checks ultimately will not clear.

8. From in or about January 2008 to in or about May 2010, the defendant MITCHELL GERSTEIN's co-conspirators engaged in an extended check kiting scheme. The co-conspirators caused checks totaling at least approximately $750 million to be written to the Canadian companies in Canada against accounts held by Synergy and related companies in the United States. GERSTEIN's co-conspirators did so while knowing that the accounts against

which they caused these checks to be written did not contain sufficient funds to cover the checks (the "Bad Checks").

9.   It was a part of the scheme that the Canadian companies then deposited the Bad Checks into their respective accounts and received immediate credit in their accounts for the amounts of the Bad Checks.

10.   It was a further part of the scheme that the defendant MITCHELL GERSTEIN's co-conspirators received approximately $750 million in checks from the Canadian companies, corresponding to the Bad Checks they had sent to the Canadian companies.  GERSTEIN's co-conspirators deposited, and caused others to deposit, these checks into accounts held by Synergy and related companies in the United States.

11.   Because the banks Synergy and related companies used would make deposited funds immediately available for withdrawal, the check-kiting scheme artificially inflated the account balances of Synergy and related companies.  GERSTEIN's co-conspirators used those artificially inflated balances to increase Synergy's and related companies' cash flow by at least approximately $26 million, and create millions of dollars in fictitious accounts receivables and revenues.

III. False Statements to the SEC

12.   On or about August 14, 2008, the defendant MITCHELL GERSTEIN and others filed a Form 10-Q report with the

4

SEC for Synergy for the second quarter of 2008, which contained
the following material false statements and omissions: (1) that
Synergy had approximately $44,500,000 in sales, when as a result
of the check-kiting scheme, approximately 20 percent of those
sales consisted of fictitious sales; (2) that Synergy had
approximately $40,000,000 in cost of goods sold, when
approximately 20 percent of those cost of goods sold consisted of
fictitious cost of goods sold; and (3) recognition of
approximately $1,500,000 in "prepaid expenses," when as a result
of the check-kiting scheme, approximately 25 percent of those
prepaid expenses consisted of fictitious prepaid expenses.

<u>CONSPIRACY TO MAKE FALSE STATEMENTS TO THE SEC</u>

13.   The allegations contained in paragraphs 1 through
12 are repeated and incorporated as though fully set forth in
this paragraph.

14.   In or about and between March 2008 and August
2008, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendant
MITCHELL GERSTEIN, together with others, knowingly and willfully
conspired to make and cause to be made statements in Synergy's
quarterly report on Form 10-Q for the period ending June 30,
2008, a report and document required to be filed under the
Securities Exchange Act of 1934, Title 15, United States Code,
Sections 78a <u>et</u> <u>seq</u>., and the rules and regulations promulgated

5

thereunder, which were false and misleading with respect to material facts, as set forth below, contrary to Title 15, United States Code, Section 78ff(a):

(a)   A statement that sales were approximately $44,500,000 when, in fact, approximately 20 percent of those sales consisted of fictitious sales;

(b)   A statement that the cost of goods sold was approximately $40,000,000 when, in fact, approximately 20 percent of those cost of goods sold consisted of fictitious cost of goods sold; and

(c)   A statement recognizing approximately $1,500,000 in "prepaid expenses" when, in fact, approximately 25 percent of those prepaid expenses consisted of fictitious prepaid expenses.

15.   In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendant MITCHELL GERSTEIN committed and caused to be committed, among others, the following:

<u>OVERT ACTS</u>

a.   On or about August 14, 2008, GERSTEIN signed Synergy's Form 10-Q report for the quarter ending June 30, 2008.

b.   On or about March 30, 2010, GERSTEIN signed the management representation letter to the accountant who

certified Synergy's audit of the financial statements for the calendar years 2008.

(Title 18, United States Code, Sections 371 and 3551 <u>et seq</u>.)

LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

7

SIR:

PLEASE TAKE NOTICE that the within will be presented for settlement and signature to the Clerk of the United States District Court in his office at the U.S. Courthouse, 271 Cadman Plaza East, Brooklyn, New York, 11201 on the ____ day of_____, 20____, at 10:30 o'clock in the forenoon.

Dated: Brooklyn, New York

_____, 20_____

_____

United States Attorney,
Attorney for _____

To:

_____
_____
_____

Attorney for _____

SIR:

PLEASE TAKE NOTICE that the within is a true copy of _____ duly entered herein on the _____ day of _____ _____, in the office of the Clerk of the Eastern District of New York,

Dated: Brooklyn, New York

_____, 20_____

United States Attorney,
Attorney for _____

To:

_____
_____
_____

Attorney for _____

---

Criminal Action No. 12-CR-51 (KAM)
2011R01433

**UNITED STATES DISTRICT COURT**
**Eastern District of New York**

UNITED STATES OF AMERICA

- against -

MITCHELL GERSTEIN,
Defendant.

(T. 18, U.S.C., §§ 371 and 3551 et seq.)

## LORETTA E. LYNCH

United States Attorney
Eastern District of New York
United States Courthouse
271 Cadman Plaza East
Brooklyn, New York 11201

Due Service of a copy of the within_____ _____ is hereby admitted.

Dated: _____ , 20 _____

Attorney for _____

**Ilene Jaroslaw**
**Assistant U.S. Attorney    (718) 254-6236**